UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUDY GARCIA DOMINGO,

        Petitioner,

v.           Case No. 1:25-cv-00979-DHU-GJF

DORA CASTRO, in official capacity, Facility
Administrator of Otero County Processing
Center; MARY DE ANDA-YBARRA, in
official capacity, Field Office Director of ICE's
El Paso Field Office; TODD M. LYONS,
in official capacity, Acting Director of ICE,
KRISTI NOEM, in official capacity, Secretary
of the U.S. Department of Homeland Security;
PAM BONDI, in official capacity, Attorney
General of the United States,

        Respondents.

## ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER

THIS MATTER is before the Court on Petitioner's Motion for a Temporary Restraining Order and Preliminary Injunction. Doc. 2. For the reasons set forth below, Petitioner's request for a temporary restraining order is GRANTED. As to Petitioner's request for a preliminary injunction, the Court will set a hearing following further briefing by the parties.

### PROCEDURAL BACKGROUND

On August 20, 2025, Petitioner was detained by Immigration Customs and Enforcement ("ICE") after ICE conducted an immigration stop of a vehicle in which he was a passenger. Doc. 2-4 at 2. ICE eventually transferred Petitioner to the Otero County Processing Center in Chaparral, New Mexico, where he remains detained. Doc. 2-6 at 4.

1

On October 7, 2025, Petitioner filed a petition for writ of habeas corpus. Doc. 1. In his petition for writ of habeas corpus, Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without a pre-deprivation hearing where they must prove a change in circumstances, specifically that he is now a danger to the community or a flight risk, by clear and convincing evidence. *Id*. at 11-12. In the alternative, Petitioner claims that Respondents have violated the Immigration and Nationality Act ("INA") by detaining him without the possibility of a bond hearing. *Id*. at 26. Petitioner argues that Respondents have erroneously classified him as an "applicant for admission" under 8 U.S.C. § 1225, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States," subject to mandatory detention, rather than as a noncitizen under 8 U.S.C. § 1226 entitled to a bond hearing. *Id*. at 27-35.

On October 7, 2025, Petitioner also filed a Motion for Temporary Restraining Order and Preliminary Injunction. Doc. 2. In his Motion, Petitioner requests that the Court order his immediate release from immigration custody and bar Respondents from re-detaining him unless 1) he is provided with a pre-deprivation hearing before a neutral arbiter in which Respondents prove by clear and convincing evidence that he is now a danger or a flight risk, or 2) provide him with a bond hearing pursuant to 8 U.S.C. § 1226 within seven days. *Id*. at 1-2, 9.

On October 14, 2025, the Court held a hearing on Petitioner's Motion for Temporary Restraining Order, at which both counsel for Petitioner and Respondents appeared. *See* Doc. 6.

## FACTUAL FINDINGS

The record shows that the Respondents received notice of the request for the Temporary Restraining Order on or about October 7, 2025. *See* Doc. 2-1; Doc 6. However, prior to the hearing on the Motion for Temporary Restraining Order, Respondents provided no response to

the Petitioner's request. The Petitioner has provided the Court with documents, including, among other things, sworn declarations from Petitioner and his counsel and government documents pertaining to his prior immigration proceedings. See Docs. 2-3 through 2-20. The Respondents provided no information or documentation, either prior to or during the hearing, to rebut or challenge any of the information provided by Petitioner. At this stage of the litigation, the Court makes the following initial findings of fact concerning the detention of Petitioner:

1. Petitioner Rudy Garcia Domingo is a noncitizen from Guatemala who arrived in the United States on May 23, 2016, as an unaccompanied minor. Doc. 2-7. Upon entry, Petitioner encountered border immigration officials, who detained him and subsequently transferred him to the custody of the Office of Refugee Resettlement ("ORR"). Doc. 2-7 at 4; Doc. 2-8 at 4.

2. Approximately three months later, on August 23, 2016, ORR released Petitioner from immigration custody to his father. Doc. 2-8. The statute that governs the detention of unaccompanied minors encountered at the border, the Trafficking Victims Protection and Reauthorization Act ("TVPRA"), provides that, in making custody determinations, ORR should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). In releasing him, ORR determined that Petitioner was not a danger to the community or a flight risk. See Doc. 2-20 at 3 (listing danger to self, danger to the community, and runaway risk as ORR placement conditions); see also Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("ORR may release the minor to a "sponsor" . . . so long as the minor is not dangerous . . . Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").

3. Following Petitioner's release from immigration custody, Petitioner moved to Homestead, Florida, with his father. Doc. 2-8 at 3. He established a life there. He went to high

school. Doc. 2-4 at 3. He met his partner and raised three children—two that are his and a third that is his partners from a previous relationship. *Id.* at 3. He worked in landscaping and agriculture. *Id.* at 2. He filed a timely asylum application, obtained counsel, attended his immigration hearings, and otherwise pursued his case. Doc. 2 at 15; Doc. 2-9.

4.  Approximately nine years later, on August 20, 2025, Petitioner was re-detained by ICE officials after they conducted an immigration stop of a vehicle in which Petitioner was a passenger. Doc. 2-4 at 2.

5.  ICE did not tell Petitioner why he was being detained. *Id.* Petitioner explained to ICE that he had a pending asylum case. *Id.* ICE eventually transferred Petitioner to the Otero County Processing Center in Chaparral, New Mexico, where he remains detained. Doc. 2-6 at 4. Despite efforts, neither Petitioner nor his counsel have been told why Petitioner was detained. Doc. 2-4 at 4; Doc. 2-14.

6.  At the hearing before the Court on October 14, 2025, counsel for Respondents could not provide any information explaining the basis for Petitioner's detention. *See* Doc. 6 at 2 (describing that Respondents' counsel has not yet received Petitioner's "A" file, including his I-213, which contains information regarding Petitioner's detention).

## LEGAL STANDARD

A petitioner seeking a temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest weigh in his favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A petitioner seeking a temporary restraining order must demonstrate that "*all four* of the equitable factors weigh it its favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). "The likelihood-of-success and irreparable-harm factors

are 'the most critical.'" *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1139 (10th Cir. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). With regard to the irreparable-harm factor, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (quotation marks and citations omitted).

The purpose of a temporary restraining order "is to preserve the status quo [ante]" before a final decision on the merits. *Resolution Trust Corp v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo ante is defined as "as the last peaceable uncontested status existing between the parties before the dispute developed." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 798 n. 3 (10th Cir. 2019).

## DISCUSSION

### I.  Petitioner is Likely to Succeed on the Merits.

#### A. Due Process Claim

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without first providing him with a pre-deprivation hearing. Doc. 2 at 10. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

##### 1. Petitioner Possesses a Protected Liberty Interest.

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that there is a substantial likelihood that Petitioner will be able to show that his

release from immigration custody in this case rises to the level of a protected liberty interest. As Petitioner notes, courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). Doc. 2 at 14 (citing *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010)). Comparing Petitioner's release from immigration custody in this case to the liberty interest in parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody nine years ago and has lived in Florida with his family since. Doc. 2 at 15. During those nine years, he worked in landscaping and agriculture. Doc. 2-4 at 2. He also met his partner and raised three children with her. *Id.* at 3.

## 2. A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained.

Having found that there is a substantial likelihood that Petitioner will be able to show a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interests accords with the Constitution. To determine such, the Court considers the three factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Turning to the first *Mathews* factor, the Court finds there is a substantial likelihood that Petitioner can show that he has a significant private interest in remaining free from detention after being released from ORR custody. Doc. 2 at 17. As mentioned previously, Petitioner was out of immigration custody for approximately nine years prior to being re-detained by ICE officials.

Turning to the second *Mathews* factor, the Court finds that there is a substantial likelihood that Petitioner can show that risk of erroneous deprivation in this case is considerable, particularly here where ICE made a unilateral decision to re-detain Petitioner and Respondents have not explained why. *See* Doc. 2-4 at 4; Doc. 2-14.

Turning to the third *Mathews* factor, the Court finds there is a substantial likelihood that Petitioner can show that Respondents' interest in placing Petitioner in detention without a hearing is low. The effort and costs to provide Petitioner with procedural safeguards is minimal.

On balance, the Court finds that there is a substantial likelihood that Petitioner, under the three *Mathews* factors, can show that he was entitled to a pre-deprivation hearing prior to being re-detained. Having found that there is a substantial likelihood that Petitioner can show a protected liberty interest and that due process requires a pre-deprivation hearing, the Court finds that Petitioner has established a substantial likelihood of success on the merits of his due process claim.

B.  <u>Violation of the INA</u>

In the alternative, Petitioner argues that Respondents violated the INA by detaining him without the possibility of a bond hearing. Doc. 2 at 21. Petitioner argues that Respondents have erroneously classified Petitioner as an "applicant for admission" under 8 U.S.C. § 1225, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the

United States," subject to mandatory detention, rather than as a noncitizen under 8 U.S.C. § 1226 entitled to a bond hearing. Doc. 2 at 21-27.

This Court finds Petitioner has established a substantial likelihood of success on the merits of this alternative claim as well. At the time that Petitioner was re-detained, he was not seeking entry to the United States. He was in Homestead, Florida, on his way to work. Doc. 2-4 at 2. Petitioner had also not just arrived, or even recently arrived, to the United States. He had been in the United States for approximately nine years.

## II. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

Turning to the second required showing for a temporary restraining order, the Court finds that Petitioner has demonstrated that his detention has caused and will continue to cause irreparable harm. As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual" because it, among other things, "disrupts family life." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). Indeed, Petitioner has shown that his children suffer greatly from his sudden absence in their lives. Doc. 2 at 28.

Moreover, it is well-established that "the infringement of a constitutional right" is enough to show irreparable harm. *Free the Nipple-Fort Collins*, 916 F.3d at 805. As such, "no further showing of irreparable injury" is necessary. *Id.*

## III. The Balance of Equities and Public Interest Weigh in Petitioner's Favor.

When the government is the party opposing the temporary restraining order, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. The Court finds that there the balance of equities and public interest weigh in Petitioner's favor. Any burden on Respondents to release Petitioner from custody and provide a pre-deprivation hearing is minimal compared to

the harm that Petitioner and his family are suffering due to his continued detention. It is also not in the public's interest to allow unexplained detention.

## CONCLUSION

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. The Court also finds that the status quo ante is the position that Petitioner was in prior to his re-detention by ICE. Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's request for a temporary restraining order is GRANTED;

2. Respondents are ORDERED to release Petitioner within twenty-four hours of this order. Upon release, Respondents may not subject Petitioner to any post-release monitoring or supervision, nor prohibit Petitioner from returning to Florida;

3. Respondents are RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner is a danger or flight risk;

4. The Court will hear Petitioner's request for a preliminary injunction following further briefing by the parties. The Court will consolidate the hearing on the preliminary injunction with the hearing on the merits of the habeas petition. *See* FED. R. CIV. P. 65(a)(2). Respondents have **thirty days** from the date of this order to respond to Petitioner's request for a preliminary injunction. After the thirty days, Petitioner has **fourteen days** to file a reply; and

5. This order, for good cause shown, shall remain in effect until the consolidated hearing on the preliminary injunction and merits of the habeas petition. *See* FED. R. CIV. P. 65(b)(2).

_____
DAVID HERRERA URIAS
United States District Judge